UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS L. ANDERSON,<br><br>        Plaintiff,<br><br>v.<br><br>STRAUSS NEIBAUER & ANDERSON APC PROFIT SHARING 401(K) PLAN; DOUGLAS L. NEIBAUER; STRAUSS NEIBAUER, A PROFESSIONAL CORPORATION; TOTAL BENEFIT SERVICES, INC.,<br><br>        Defendants. | 1:09-cv-01446 OWW JLT<br><br>MEMORANDUM DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 19). |

## I. INTRODUCTION

This case concerns disputed pension plan benefits under the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiff Thomas L. Anderson ("Plaintiff") moves for summary judgment that:

(1)  Plaintiff is entitled to distribution of his account balance under the Defendant Strauss Neibauer & Anderson APC Profit Sharing Plan (the "Plan");

(2)  Defendant Douglas L. Neibauer ("Neibauer") breached his fiduciary duty to Plaintiff under the Plan; and

(3)  Plaintiff is entitled to attorneys' fees and costs incurred in this litigation.

1

Doc. 21. Defendants filed an opposition. Doc. 29. Plaintiff filed a reply. Doc. 74.

**II. FACTUAL BACKGROUND**

A. <u>Procedural History</u>

On March 6, 2008, Defendant Strauss Neibauer ("Firm") filed a complaint against Plaintiff in the Superior Court of California, County of Stanislaus. Doc. 32 Ex. 1. The complaint asserted eleven causes of action. The fourth cause of action seeks rescission of (1) a $150,000 bonus paid to Plaintiff and (2) contributions totaling between $50,000 to $100,000 made to the Plan on Plaintiff's behalf. The rescission claim is based upon the following alleged acts of Plaintiff: (a) falsifying SN&A's application for a legal malpractice insurance policy, resulting in a denial of coverage; (b) using the firm credit card for unauthorized non-expense items; (c) filing false documents with the San Joaquin County court in DeSantiago v. Hill; and (d) demanding copies of the estate planning documents of Defendant Neibauer while he was hospitalized for a brain tumor from March through April 2007. The complaint alleges that the rescission of Plan contributions is justified by "mistake of fact," i.e., that if SN&A had been aware of Plaintiff's conduct, it would have terminated Plaintiff and not made any contributions to the Plan on his behalf. Plaintiff filed a cross-complaint for damages in state court against Defendants Firm and Neibauer on April 9,

2008. Doc. 32 Ex. 3.

On August 17, 2009, Plaintiff filed this federal suit asserting the following ERISA claims:

(1)    declaratory relief under 28 U.S.C. § 2201 and ERISA § 502(a)(3) against Defendants;

(2)    claim for benefits under ERISA § 502(a)(1)(B) against Defendants Neibauer and the Plan;

(3)    breach of fiduciary duty under ERISA §§ 502(a)(2) and 502(a)(3) against Defendants Firm, Neibauer and Total Benefit Services, Inc. ("TBS");

(4)    injunctive relief and nondisclosure penalties under ERISA § 502(c)(1) against Defendants Neibauer and TBS; and

(5)    equitable and injunctive relief against Defendants Neibauer, Firm, and TBS under ERISA § 502(a)(3).

Defendant TBS was dismissed without prejudice on June 9, 2010. Doc. 18.

On August 6, 2010, Plaintiff filed this motion for summary judgment. Doc. 21. Defendants filed an opposition on September 3, 2010. Doc.29. Plaintiffs filed a reply on October 4, 2010. Doc. 74.

On September 8, 2010, Defendants filed a motion to dismiss, or, in the alternative, stay this case until the conclusion of the pending state court case. Doc. 35. Plaintiff filed an

opposition on October 4, 2010. Doc. 73. Defendants filed a reply on October 15, 2010. Doc. 79. On November 5, 2010, the court denied Defendants' motion to dismiss or, in the alternative, stay this case. Doc. 87.

### B. Undisputed Facts

#### 1. The Plan

The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2). The Plan was established in 1969 and during all times relevant maintained by the employer-sponsor, Strauss Neibauer & Anderson APC ("SN&A"), the predecessor to Defendant Firm. The Plan was established, maintained and operated pursuant to a written plan document, as amended from time to time. SN&A was the Plan sponsor, as that term is defined in ERISA § 3(16)(B)(i), 29 U.S.C. § 1002(16)(B)(i). SN&A employees were eligible to participate in the Plan, subject to Plan terms and conditions.

Participants were given summary plan descriptions ("SPD") from time to time that provided information on Plan terms and conditions, as required by ERISA. An SPD dated January 1, 2007 ("2007 SPD") was in force when Plaintiff's entitlement to distribution of his Plan account balance arose.

Article II of the 2007 SPD provides the following general information about the Plan:

- SN&A is the Plan administrator;

4

- **The Plan is self-administered;**

- **The Plan is funded through a trust; and**

- **The Plan trustees are named as Douglas L. Neibauer and Thomas Anderson.**

Doc. 25 Ex. B, TLA 0115.

Article 3 Section 2.3.11 of the Plan defines the triggers for distribution of benefits, including the following:

2.3.11 <u>Distribution Dates</u>.
...
(d) <u>Resignation or Discharge</u>. A Participant who terminates employment by reason of resignation or discharge prior to his Normal Retirement Date, shall be entitled to a distribution of his vested and non-forfeitable Account Balance as soon as administratively feasible following the next Valuation Date.

(e) <u>Plan Termination and Partial Termination</u>. In the event that the Plan terminates, including a termination resulting from a complete discontinuance of contributions, each Participant shall be entitled to his Account Balance as soon as administratively feasible following such termination.

Doc. 25 Ex. A, Bates No. 01431. Article 5 Section 2.5.1 of the Plan also discusses distributions:

2.5.1 <u>Immediate Distributions</u>. . . .A Participant whose employment is terminated on account of resignation or discharge before meeting the eligibility requirements of Normal Retirement may elect to commence distribution of benefits within a reasonable period after the distribution specified in section 2.3.11...

Doc. 25 Ex. A, Bates No. 01437.

A Participant must request distribution of all or part of his/her Plan account by contacting the Plan Administrator, who will provide the proper forms for a benefit claim. Doc. 26 Ex. A,

Bates No. 01437.

If a claim is denied, the Plan administrator must provide adequate written notice of the reasons underlying the claim denial within 90 days. Doc. 26 Ex. A, Bates No. 01481.

Plan fiduciaries must meet the standard of conduct set out in the Plan. Article 2 provides in pertinent part:

> 3.2.1 <u>Standard of Conduct</u>. The duties and responsibilities of the Plan Administrator and the Trustee with respect to the Plan shall be discharged (a) in a non-discriminatory manner; (b) for the exclusive benefit of Participants and their Beneficiaries; (c) by defraying the reasonable expenses of administering the Plan; (d) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (e) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (f) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of the Act.
>
> 3.2.10 <u>Finality of Acts or Decisions</u>. Except for the right of a Participant or Beneficiary to appeal the denial of the Plan Administrator or the Trustee made or done in good faith upon any matter within the scope of authority and discretion of the Plan Administrator or the Trustee shall be final and binding upon all persons. In the event of judicial review of actions taken by any Fiduciary within the scope of his duties in accordance with the terms of the Plan and Trust, such actions shall be upheld unless determined to have been arbitrary and capricious.

Doc. 26 Ex. A, Bates No. 01468-01469.

The Plan provides protection to Participants against claims made against Plan accounts or "anti-alienation" protection. Article 12 Section 3.12.8 of the Plan provides in pertinent part:

6

1
2
3
4
5
6

<u>Inalienability</u>. The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.

7

Doc. 26 Ex. A, Bates No. 01487. The 2007 SPD provides:

8
9
10
11

Protection of benefits: Except for the requirements of a Qualified Domestic Relations Order, your Plan benefits are not subject to claims, indebtedness, execution, garnishment or other similar legal or equitable process. Also, you cannot voluntarily (or involuntarily) assign your benefits under this Plan.

12

Doc. 26 Ex. B, TLA 0136.

13

The Plan includes the following language in Article 2

14

Section 2.2.2:

15
16
17
18

<u>Return of Contributions</u>. Employer Contributions shall be returned to the Employer in the following instances: (a) If the contribution is made by the Employer by mistake of fact, then the contribution shall be returned within one year after its payment upon the Employer's written request.

19

Doc. 25 Ex. A, Bates No. 01427.

20

Article 12 Section 3.12.1 provides:

21
22
23

<u>No Reversion to Employer</u>. Except as specifically provided in the Plan, no part of the corpus or income of the Trust shall revert to the Employer or be used for, or diverted to purposes other than for the exclusive benefit of Participants and their beneficiaries.

24

Doc. 26 Ex. A, Bates No. 01486.

25
26

Defendant Firm is a California Professional Corporation and

27

is the "plan sponsor" of the Plan. Defendant TBS provided third

28

party administrative services to the Plan. Defendant Neibauer is

7

a Plan fiduciary and a principal of the law firm of SN&A.

The Plan was terminated effective May 30, 2007 through a Resolution of the Board of Directors of SN&A.

2. Plaintiff's Claim for Benefits

Plaintiff was a Plan participant and had a vested Plan account balance in excess of $700,000 as of June 15, 2007. Plaintiff has an outstanding Plan loan. The parties agree that any Plan distribution made to Plaintiff will be reduced by the outstanding loan balance.

Plaintiff was a shareholder in SN&A, predecessor to Defendant Firm, and was affiliated with that firm for more than 30 years.   On June 15, 2007, Plaintiff terminated his employment with SN&A.

Plaintiff submitted a claim for his Plan benefits after his termination, requesting a rollover to an Individual Retirement Account ("IRA").

By letter dated September 1, 2007, Defendant Neibauer first denied Plaintiff's benefit claim stating, in pertinent part:

> However, in view of the numerous financial claims of Strauss Neibauer against you, it is my intention, as trustee, at this date to seriously consider not making any distribution of your interest in the profit sharing plan of Strauss Neibauer until all claims against you have been resolved. It hardly seems "equitable" for you to be receiving over $700,000 via distribution while at the same time you have clearly and intentionally caused significant financial harm to the law firm of Strauss Neibauer as outlined above and detailed in other letters to you by that law firm. I am not aware of any defense you have to any of these financial claims of Strauss Neibauer, collectively being at least

1          $700,000 or more.

2          If the dispute is not resolved, at the very least I would
           likely consider depositing the funds with the court in an
3          interpleader action to allow you and the firm to litigate
           the various claims prior to any distribution by the court of
4          the funds to the winner[s] in the litigation. This
           litigation would likely take one to two years based upon my
5          experience.

6
           I do intend, as trustee, to make distributions to all other
7          participants in the profit sharing plan, since I believe all
           other participants are honest and ethical individuals; you
8          and I both know that you do not fall within that
           description, whatsoever.
9

10         I also want you to know that only I will be making the
           decision re: distribution or no distribution to you; neither
11         the CPA Polkinghorne nor the administrator, Mark Sconyers,
           has any input on this decision. I, alone, as trustee, will
12         have to be convinced to sign a check for you.

13
   Neibauer Depo. Ex. 7, TLA 0072-0073.
14
           Thereafter, Plaintiff made more than one written request to
15
   Defendant Neibauer, as the Plan fiduciary, and to Defendant
16
   Neibauer's counsel for distribution of his Plan account balance
17
   in order to proceed with a rollover IRA. Doc. 21 Ex. F.
18
           Defendant Neibauer, as Plan fiduciary, has failed to approve
19
   distribution of Plaintiff's Plan account balance.
20
           By letter dated January 10, 2008, Morgan Stanley placed a
21
   hold on the accounts related to the Plan. Neibauer Depo. Ex. 11.
22
           On or about October 4, 2008, TBS prepared a "Participant
23
   Distribution Notice" for Plaintiff that included a handwritten
24
   notation "were not forwarded to Anderson." Citing lack of
25
   personal knowledge, Defendants dispute whether this notice was or
26

27

28
                                        9

was not sent to Plaintiff. TBS prepared this notice based on TBS's receipt of notice of Plan termination from SN&A or based on notice that Plaintiff terminated his employment with SN&A on June 15, 2007.

On October 18, 2008, TBS drafted an email memo discussing the risks involved with making Plan funds part of a dispute. Doc. 24 Ex. A, Bates No. 01263.

C. <u>Disputed Facts</u>

Plaintiff contends that as the majority shareholder of SN&A and the sole SN&A shareholder after June 15, 2007, Defendant Neibauer functioned as the Plan administrator. Defendant Neibauer admits he was the majority shareholder of SN&A after June 15, 2007, but not its sole shareholder. Mina Ramirez was an inactive shareholder of SN&A on that date.

Defendant Neibauer further states that he was not the sole Plan administrator. There is a dispute as to when Plaintiff ceased being a trustee of the Plan. By letter dated August 3, 2007, Defendant Neibauer informed Mark Polkinghorne, CPA, that Plaintiff "has been fired as trustee of the profit sharing plan of this law firm; and that he no longer has any authority in respect to the administration of the profit sharing plan." Neibauer Depo. Ex. 5. However, Defendant Neibauer contends that from June 15, 2007 to March 15, 2010, Plaintiff maintained to Morgan Stanley that he was a co-trustee of the Plan.

10

Plaintiff claims that he contacted the Department of Labor's Employee Benefits Security Administration to request assistance in obtaining distribution of his Plan account balance. Defendants dispute this allegation for lack of personal knowledge.

Plaintiff contends that the stated reasons for Defendant Neibauer's repeated denial of Plaintiff's benefit claim were: (1) Plaintiff is a "crook" and (2) Plaintiff's Plan account is subject to "rescission" of bonus and contributions made "by mistake." Doc. 22 ¶ 32. Defendant Neibauer argues that calling Plaintiff a "crook" was the justification for his removal as co-trustee of the Plan. Defendant Neibauer contends that he filed the lawsuit in state court to obtain a ruling on whether SN&A was entitled to recover contributions made to the Plan for Plaintiff due to a "mistake of fact."

The amount of money Defendant Firm contributed to Plaintiff's Plan account is uncertain. Defendants' state court complaint alleges that in a letter dated September 8, 2007, Defendant Firm advised Plaintiff that it was rescinding contributions made to the Plan on Plaintiff's behalf "in sums from $50,000 to $100,000." Doc. 34 Ex. A ¶ 32. That letter has not been provided. A letter dated June 23, 2009 from Defendants' attorney to Plaintiff's attorney states that "[p]rofit sharing contributions payable to Tom Anderson for the years 2004 through 2006 total $53,050." Neibauer Depo. Ex. 19, TLA 0151. Plaintiffs

11

argue that a review of the Plan's account statements shows that Defendant Firm only contributed relatively small amounts to Plaintiff's Plan account: "$7,437.53 in 2004, $22,388.28 in 2005, and $0.00 in 2006." Doc. 74 Ex. A, Bates No. 02193-02195.

The parties disagree on the balance of Plaintiff's Plan loan. Defendants allege that the outstanding balance is $15,000 to $17,000, but Plaintiff disagrees with Defendants' calculation.

### III. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986).

If the moving party would bear the burden of proof on an

issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id.*

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. Fed.R.Civ.P. 56(e). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

1

## IV. DISCUSSION

2

### A. Plaintiff's Claim for Benefits

3

4

Plaintiff moves for summary judgment on his claim for

5

benefits under ERISA § 502(a)(1)(B) and declaratory relief under

6

ERISA § 502(a)(3).

7

ERISA § 502(a)(1)(B) permits ERISA plan participants to

8

bring a civil action to recover benefits due under the terms of a

9

plan; to enforce rights under the terms of the plan; or to

10

clarify rights to future benefits under the terms of the plan. 29

11

U.S.C. § 1132(a)(1)(B).

12

ERISA § 502(a)(3) permits ERISA plan participants to bring

13

a civil action "(A) to enjoin any act or practice which violates

14

any provision of this subchapter or the terms of the plan, or (B)

15

to obtain other appropriate equitable relief (i) to redress such

16

violations or (ii) to enforce any provisions of this subchapter

17

or the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA §

18

502(a)(3) is a catchall provision that acts as a safety net,

19

offering appropriate equitable relief for injuries caused by

20

violations that ERISA § 502 does not elsewhere adequately remedy.

21

*Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076,

22

1083 (9th Cir. 2005). Relief is not appropriate under ERISA §

23

502(a)(3) if ERISA § 502(a)(1)(B) offers an adequate remedy. *See*

24

*LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 258, 128

25

S.Ct. 1020 (2008); *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116

26

27

28

14

S.Ct. 1065 (1996). To the extent that ERISA § 502(a)(1) provides adequate remedies to Plaintiff's claim for benefits, ERISA § 502(a)(3) will not apply.

   1. **Standard of Review of Plan Administrator's Decision**

        An ERISA plan administrator's decision is reviewed *de novo*, unless the plan document grants the administrator discretion to interpret the plan terms and determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989). If the plan confers discretionary authority, then the standard of review shifts to abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

        "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). In reviewing an ERISA administrator's decision for abuse of discretion, a court should uphold the decision "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Id.*

        The Plan explicitly grants discretion to the Plan administrator. The relevant Plan language provides:

        Except for the right of a Participant or Beneficiary to appeal the denial of a claim, any decision or action of the

15

Plan Administrator or the Trustee made or done in good faith upon any matter within the scope of authority and discretion of the Plan Administrator or the Trustee or the Trustee shall be final and binding on all persons. Doc. 26 Ex. A, Bates No.01469.

Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the applicant is entitled to them. *Id.* at Bates No. 01481.

Benefits under this Plan granted pursuant to such an appeal will be paid only if the Employer decides in his discretion that the applicant is entitled to them. *Id.* at Bates No. 01481.

Because the Plan grants the administrator discretion to construe Plan terms and determine eligibility for benefits, the appropriate standard of review is abuse of discretion.

Plaintiff argues that *de novo* review should apply because the administrator's actions did not comply with the clear terms of the Plan, were tainted by self-interest, and were not taken in good faith or in the exercise of discretion. These contentions do not change the review standard. Procedural irregularities and conflicts of interest normally do not justify shifting an abuse of discretion review to *de novo*. *See Abatie*, 458 F.3d at 967, 972; *Gatti v. Reliance Std. Life Ins. Co.*,415 F.3d 978, 985 (9th Cir. 2005)(concluding that the district court had erred by allowing "de novo review any time a benefits administrator violates the procedural requirements in ERISA's regulations, no matter how small or inconsequential the violation").

Only when a plan administrator "engages in wholesale and flagrant violations of the procedural requirements of ERISA, and

16

thus acts in utter disregard of the underlying purpose of the plan as well," will the standard of review shift from abuse of discretion to *de novo*. *Abatie*, 458 F.3d at 971 (discussing *Blau v. DelMonte Corp.*, 748 F.2d 1348 (9th Cir.) as an example of egregious behavior, where the administrator kept the policy details secret from employees, offered no claims procedure, and did not provide them in writing the relevant plan information, the administrator "failed to comply with virtually every applicable mandate of ERISA").

Procedural irregularities and conflicts of interest are matters to be weighed in deciding whether an administrator's decision was an abuse of discretion. *Abatie*, 458 F.3d at 972. A court must take into account the "nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id.* at 957. "A court may weigh a conflict more heavily if, for example, an administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." *Id.* at 968-969 (internal citations omitted).

The abuse of discretion standard applies to review of the Plan administrator's denial of Plaintiff's benefit claim, taking

into account the nature, extent, and effect of any conflict of interest. Defendants' apparent conflict of interest is evident. A conflict of interest exists where an employer both funds the plan and evaluates claims and pays for benefits, as is the case here. See *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S.Ct. 2343 (2008). The co-trustee's denial letters are based on incorrect interpretations of Plan terms and decisions made against the weight of the evidence in the record. The conflict of interest is exacerbated by the intense personal dispute between Defendants and Plaintiff. Defendant Neibauer's September 1, 2007 letter denying Plaintiff's claim for benefits emphasizes the conflict of interest between Defendants' roles as Plan fiduciaries and potential claimants against Plaintiff:

> However, in view of the numerous financial claims of Strauss Neibauer against you, it is my intention, as trustee, at this date to seriously consider not making any distribution of your interest in the profit sharing plan of Strauss Neibauer until all claims against you have been resolved. It hardly seems "equitable" for you to be receiving over $700,000 via distribution while at the same time you have clearly and intentionally caused significant financial harm to the law firm of Strauss Neibauer as outlined above and detailed in other letters to you by that law firm. I am not aware of any defense you have to any of these financial claims of Strauss Neibauer, collectively being at least $700,000 or more.

Neibauer Depo. Ex. 7, TLA 0072-0073.

Procedural irregularities must also be analyzed. The 2007 SPD provides that an adverse benefit notice will include:

> (a)   The specific reason(s) for denial,
> (b)   Reference to the specific plan provisions on which the

18

denial is based,
(c)   A description of any additional documentation to perfect your claim and an explanation of why such information is necessary,
(d)   A description of the appeals procedure's applicable time limits and a statement of your rights under ERISA and the steps you can take to enforce them.

Doc. 26 Ex. B, TLA 0136. The September 1, 2007 denial letter does not follow the Plan's procedures. Although it does state a reason for denial, it does not reference a specific plan provision; identifies no additional documentation necessary to perfect the claim and does not explain why such documentation is necessary; does not describe the appeal procedures or their time limits; and omits to state Plaintiff's rights under ERISA. These procedural irregularities bear on the determination of whether the Plan administrator abused its discretion. Based on factual disputes about Neibauer's conduct, it cannot be decided if the conflicts require application of a *de novo* standard.

        2. <u>Benefit Claim</u>

        The Ninth Circuit has consistently explained that administrators "abuse their discretion if they . . . construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan." *Conseco v. Const. Laborers Pension Trust,* 93 F.3d 1099, 1113 (9th Cir. 2000). The question presented is not whose interpretation of the plan documents is most persuasive, but whether the plan administrator's is unreasonable. *Id.*

19

It is undisputed that Article 3 Section 2.3.11 defines when Plan participants "shall be entitled" to distribution of Plan benefits, including: (1) Plan termination[1] and (2) resignation or discharge[2]. Plaintiff argues that the word "shall," as opposed to "may," makes distributions mandatory, not discretionary. It is undisputed that the Plan was terminated effective May 30, 2007 before Plaintiff's employment with SN&A terminated on June 15, 2007. It is also undisputed that Plaintiff has made more than one claim for his Plan benefits and that Plaintiff has not received distribution of his Plan account.

Defendants' stated reason for denying Plaintiff's pension benefits is that they are entitled to rescission of all SN&A contributions made to Plaintiff's Plan account due to a "mistake of fact." Specifically, if Defendant Firm had known of Plaintiff's alleged misconduct, it would have terminated Plaintiff and not made any contributions to his Plan account. Defendants' argument is based on Article 2 Section 2.2.2 of the Plan, which provides in pertinent part:

> Employer Contributions shall be returned to the Employer in the following instances: (a) If the contribution is made by the Employer by mistake of fact, then the contribution shall

---

[1] Article 3 Section 2.3.11(e) of the Plan provides: "In the event that the Plan terminates, including a termination resulting from a complete discontinuance of contributions, each Participant shall be entitled to his Account Balance as soon as administratively feasible following such termination." Doc. 25 Ex. A, Bates No. 01431.

[2] Article 3 Section 2.3.11(d) of the Plan provides: "A Participant who terminates employment by reason of resignation or discharge prior to his Normal Retirement Date, shall be entitled to a distribution of his vested and non-forfeitable Account Balance as soon as administratively feasible following the next Valuation Date." Doc. 25 Ex. A, Bates No. 01431.

be returned within one year after its payment upon the
Employer's written request.

Doc. 25 Ex. A, Bates No. 01427. Defendant Neibauer states that

his legal research did not disclose any existing federal district

court or federal appellate court case interpreting Section 2.2.2.

Instead, Defendants' argument is based on Cal. Civ. Code §

1689(b), which provides in pertinent part:

A party to a contract may rescind the contract in the
following cases:(1) If the consent of the party rescinding,
or of any party jointly contracting with him, was given by
mistake, or obtained through duress, menace, fraud, or undue
influence, exercised by or with the connivance of the party
as to whom he rescinds, or of any other party to the
contract jointly interested with such party.

To determine whether Defendants' interpretation is

unreasonable and therefore an abuse of discretion, it is

necessary to separate Plaintiff's vested Plan account into two

parts: (1) non-employer contributions and (2) employer

contributions. It is undisputed that Plaintiff's vested account

Plan balance exceeded $700,000 when he terminated employment.

However, the exact amount Defendant Firm contributed to

Plaintiff's Plan account is in dispute and is subject to proof of

the amount.

   3. <u>Non-Employer Contributions</u>

ERISA § 206(d)(1) provides that "[e]ach pension plan shall

provide that benefits provided under the plan may not be assigned

or alienated." 29 U.S.C. § 1056(d)(1). ERISA's pension plan anti-

alienation provision is "mandatory and contains only two explicit

21

exceptions, see §§ 1056(d)(2), (d)(3)(A), which are not subject to judicial expansion." *Boggs v. Boggs*, 520 U.S. 833, 851, 117 S.Ct. 1754 (1997). "The anti-alienation provision can be seen to bespeak a pension law protective policy of special intensity: Retirement funds shall remain inviolate until retirement." *Id.* (quoting J. Langbein & B. Wolk, Pension and Employee Benefit Law 547 (2d ed. 1995)).

As required by ERISA § 206(d)(1), the Plan and 2007 SPD contain anti-alienation provisions. Article 12 Section 3.12.8 of the Plan provides in pertinent part:

> <u>Inalienability</u>. The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.

Doc. 26 Ex. A, Bates No. 01487. The 2007 SPD provides:

> Protection of benefits: Except for the requirements of a Qualified Domestic Relations Order, your Plan benefits are not subject to *claims*, indebtedness, execution, garnishment or other similar legal or equitable process. Also, you cannot voluntarily (or involuntarily) assign your benefits under this Plan.

Doc. 26 Ex. B, TLA 0136 (emphasis added).

Defendants cannot rely on Article 2 Section 2.2.2 of the Plan to justify refusal to distribute the non-employer contributions in Plaintiff's Plan account. That section only provides for the return of *employer* contributions due to a

mistake of fact. Rather, the Plan's anti-alienation clauses

control the distribution of Plaintiff's non-employer

contributions from the Plan. The 2007 SPD provides Plaintiff's

Plan benefits are not subject to "claims, indebtedness,

execution, garnishment or other similar legal or equitable

process." Doc. 26 Ex. B, TLA 0136. This language is not ambiguous

or subject to another interpretation.

Cal. Civ. Code § 1689(b) does not alter this result.

"It is an elementary tenet of statutory construction that

'[w]here there is no clear intention otherwise, a specific

statute will not be controlled or nullified by a general

one....'" *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493

U.S. 365, 375, 110 S.Ct. 680 (1990). The Supreme Court recognizes

that it is not "appropriate to approve any generalized equitable

exception-either for employee malfeasance or for criminal

misconduct-to ERISA's prohibition on the assignment or alienation

of pension benefits. Section 206(d) reflects a considered

congressional policy choice, a decision to safeguard a stream of

income for pensioners (and their dependents, who may be, and

perhaps usually are, blameless), even if that decision prevents

others from securing relief for the wrongs done them. If

exceptions to this policy are to be made, it is for Congress to

undertake that task." *Id*. at 376. "As a general matter, courts

should be loath to announce equitable exceptions to legislative

23

requirements or prohibitions that are unqualified by the statutory text." *Id*. The court cannot interpret a California state law to abrogate a preemptive federal statute, ERISA's, protection of pension plans against alienation.

For these reasons, Defendants' refusal to distribute Plaintiff's non-employer benefits was unreasonable and an abuse of discretion. There is no genuine issue of material fact on recovery of Plaintiff's contributions, and Plaintiff is entitled to judgment as a matter of law. The exact amount of Plaintiff's non-employer contributions is in dispute and is subject to proof of amount. Plaintiff's motion for summary judgment with respect to his claim for the non-employer portion of his benefits is GRANTED, subject to proof of the amount.

4. Employer Contributions

The analysis for Defendant Firm's contributions to Plaintiff's Plan account is different.

Article 2 Section 2.2.2 of the Plan provides that employer contributions "shall be returned to the Employer in the following instances: (a) If the contribution is made by the Employer by mistake of fact, then the contribution shall be returned within one year after its payment upon the Employer's written request." This provision of the Plan complies with ERISA § 403(c), which provides in pertinent part:

> (c) Assets of plan not to inure to benefit of employer; allowable purposes of holding plan assets.

      **(1) Except as provided in paragraph (2) . . . the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.**

      **(2)(A) In the case of a contribution . . . (i) if such contribution or payment is made by an employer to a plan (other than a multiemployer plan) by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.**

**29 U.S.C. § 1103(c).**

      **The Ninth Circuit has recognized an employer's right to bring an action under ERISA § 403(c) to recover contributions mistakenly paid to a pension trust.** *Award Serv., Inc. v. N. Cal. Retail Clerks Unions & Food Emp'r Joint Trust Fund*, **763 F.2d 1066, 1068 (9th Cir. 1985). An employer is entitled to a refund if it can establish that it made mistaken contributions within the meaning of ERISA § 403(c)(2)(A)(ii) and that the "equities favor a refund of these contributions."** *British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund*, **882 F.2d 371, 374-375 (9th Cir. 1989). However, the Ninth Circuit has stated that it "has not recognized any such federal common law action for restitution in favor of employers. And there would appear to be no basis for such an action particularly where this court does allow employers to bring suit under ERISA for restitution of mistaken contributions."** *Id.* **at 377.**

      **Plaintiff argues that the federal opinions addressing the**

25

"mistake of fact" doctrine under ERISA are virtually all cases that involve a claim of clerical error or mathematical error in an employer's contribution to a pension plan, or an employer's mistaken belief that it was bound to a collective bargaining agreement. Plaintiff cites *British Motor Car Distrib., Ltd.* to show that the Ninth Circuit rejected a non-arithmetic actuarial error as a "mistake of fact." *Id.* at 376. In that case, the Ninth Circuit reviewed the legislative history of ERISA § 403(c) to support its holding:

> An employer's contributions can be returned ... if made as a mistake of fact. (For example, an employer may have made an arithmetical error in calculating the amounts that were to be contributed to the plan.)" Conference Rep., H.R. Rep. No. 1280, 93d Cong., 2d Sess. 303, reprinted in 1974 U.S. Code Cong. & Admin. News 5038, 5083. Although the example is certainly not meant to be exhaustive, there is nothing in the legislative history supporting the view that a fiduciary's actuarial projection could be a mistake of fact for purposes of section 403(c)(2)(A)(ii).

*Id.* Plaintiff also cites IRS Private Letter Ruling 9144041, which provides that mistake of fact is fairly limited. In general, a misplaced decimal point, an incorrectly written check, or an error in making a calculation, are examples of situations that could be construed as constituting a mistake of fact. What an employer presumed or assumed is not a mistake of fact. I.R.S. P.L.R. 9144041 (Aug. 9, 1991).

In reviewing the Plan administrator's decision, the inquiry is not whose interpretation of the Plan documents is most persuasive, but whether the Plan administrator's is unreasonable.

26

*Conseco,* 93 F.3d at 1113. Defendant's "mistake of fact" argument derives from a Plan provision which was adopted pursuant to ERISA § 403(c): "If the contribution is made by the Employer by mistake of fact, then the contribution shall be returned within one year after its payment upon the Employer's written request." Doc. 25 Ex. A, Bates No. 01427. It is unclear whether Defendants may rely on Cal. Civ. Code § 1689(b) to support their claim for rescission. However, the Ninth Circuit has recognized the ability of employers to rescind pension plan contributions due to a mistake of fact under ERISA. *Award Serv., Inc.*, 763 F.2d at 1068. Defendants' claims are not based on ERISA or federal law and Plaintiff has not argued preemption in its motion for summary judgment.

    The main issue here is one of statutory interpretation. Plaintiff has not affirmatively demonstrated that a reasonable trier of fact could find as a matter of law that Defendants' argument is unreasonable and that Defendants abused their discretion in denying Plaintiff's claim for the employer contributions in his Plan account. In determining whether Defendants abused their discretion, procedural irregularities and Defendants' conflict of interest must be weighed and considered considered. Under the totality of the circumstances, it cannot be decided that Plaintiff is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment with respect to his

claim for the employer portion of his benefits is DENIED.

B. __Plaintiff's Claim for Breach of Fiduciary Duties__

Plaintiff moves for summary judgment that Defendant Neibauer's failure to approve distribution of Plaintiff's Plan account balance constitutes a breach of fiduciary duty as a matter of law. Plaintiff seeks remedies for breach of fiduciary duties under ERISA § 409(a), ERISA § 502(a)(2) and ERISA § 502(a)(3)[3].

ERISA § 409(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of Section 111 of this title.

29 U.S.C. § 1109(a). ERISA § 502(a)(2) authorizes actions under ERISA § 409(a). 29 U.S.C. § 1132(a)(2). While ERISA § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, the provision does authorize recovery for breaches of fiduciary duty that impair the value of plan assets in a participant's individual account. *LaRue v. DeWolff, Boberg & Assoc., Inc. et al.*, 552 U.S. 248, 256, 128 S.Ct. 1020 (2008).

---

[3] As stated above, recovery under ERISA § 502(a)(3) is only appropriate if ERISA § 502(a)(2) does not provide adequate remedies.

ERISA § 404(a)(1) sets forth the general duties of an ERISA fiduciary:

> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:(i) providing benefits to participants and their beneficiaries; and(ii)defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104. Article 2 Section 3.2.1 of the Plan sets forth the duties of Plan fiduciaries:

> Standard of Conduct. The duties and responsibilities of the Plan Administrator and the Trustee with respect to the Plan shall be discharged (a) in a non-discriminatory manner; (b) for the exclusive benefit of Participants and their Beneficiaries; (c) by defraying the reasonable expenses of administering the Plan; (d) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (e) by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (f) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of the Act.

Doc. 26 Ex. A, Bates No. 01468.

It is undisputed that Defendant Neibauer is a Plan trustee

and fiduciary and was acting in that capacity when he denied distribution of Plaintiff's pension Plan account.

Plaintiff argues that the Plan mandates distribution of account balances upon the termination of the Plan and termination of employment. Plaintiff argues that the Plan fiduciary, Defendant Neibauer, repeatedly refused to act in accordance with the unambiguous Plan terms and execute his fiduciary duties for the benefit of Plan participants. Plaintiff argues that as a result of the breach of fiduciary duty, Plaintiff has been denied distribution of his account and lost income while his account has remained frozen. Plaintiff offers a calculation of lost income using the Employee Benefits Security Administration's Voluntary Fiduciary Correction Program ("VFCP") Calculator. Using the date Plaintiff's account should have been distributed (February 29, 2008), the date through the date of the hearing (originally scheduled for October 18, 2010), and the account balance on December 31, 2007 (the end of the Plan year in which both triggering events occurred), Plaintiff calculates his Plan account's lost income as $89,774.09.

Defendant Neibauer argues that he exercised sound discretionary judgment in evaluating Plaintiff's claim. Defendant Neibauer contends that he was looking out for the best interests of the Plan when he attained knowledge of Plaintiff's "numerous nefarious acts." Doc. 29, 19. Defendant Neibauer argues that

filing a lawsuit in state court to adjudicate the "mistake of law" provision was an appropriate response to Plaintiff's alleged bad acts. Neibauer also contends that he never had physical possession of Plan funds; they have always remained with Morgan Stanley and disputes Plaintiff's use of the VFCP calculator to calculate lost income.

Based on Defendants' abuse of discretion in denying distribution of Plaintiff's contributions to the Plan, Defendants, including Defendant Neibauer, acted against the express language of the Plan.

There is also evidence that Defendant Neibauer, as Plan trustee, was not acting for the exclusive benefit of Plan participants. Defendant Neibauer's letter dated September 1, 2007 to Plaintiff states:

> However, in view of the numerous financial claims of Strauss Neibauer against you, it is my intention, as trustee, at this date to seriously consider not making any distribution of your interest in the profit sharing plan of Strauss Neibauer until all claims against you have been resolved. It hardly seems "equitable" for you to be receiving over $700,000 via distribution while at the same time you have clearly and intentionally caused significant financial harm to the law firm of Strauss Neibauer as outlined above and detailed in other letters to you by that law firm.

Neibauer Depo. Ex. 7, TLA 0072. Defendant Neibauer was acting for the benefit of Defendant Firm, not Plan participants.

Plaintiff has not established that he is entitled to judgment as a matter of law on this issue. Plaintiff cites *Lee v. California Butchers' Pension Trust Fund*, 154 F.3d 1075 (9th Cir.

31

1998), for the proposition that where an ERISA plan directs a fiduciary to take an action, the failure to do so results in a breach of fiduciary duty. *Lee* does not discuss breach of fiduciary duty. Rather, it holds that failure to follow Plan appeals procedures is a breach of the duty to give participants specific reasons and cite specific sections of the plan on which the denial is based. *Id.* at 1079. Summary judgment cannot be granted on Plaintiff's claim for breach of fiduciary duty. This motion is DENIED.

   C. <u>Plaintiff's Claim for Attorneys' Fees and Costs</u>

      ERISA § 502(g)(1) provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).

      A claimant must show "some degree of success on the merits" before a court may award attorney's fees under ERISA § 502(g)(1). *Hardt v. Reliance Standard. Life Ins. Co.*, _U.S. _, 130 S.Ct. 2149, 2158 (2010). "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was substantial' or occurred on a 'central issue.'" *Id.* (quoting *Ruckelshaus v. Sierra Club*,

463 U.S. 680, 688 n.9, 103 S.Ct. 3274 (1983)).

After a claimant has achieved some degree of success on the merits, a court must consider the factors under *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980), before exercising discretion to award fees under ERISA § 502(g)(1). *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121(9th Cir. 2010). The *Hummell* factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.*

Plaintiff has achieved limited success on part of his benefit claims. However, Plaintiff's other claims and material issues remain in dispute. It is therefore not yet proper to consider an award of attorneys' fees.

Even if Plaintiff has achieved "some degree of success on the merits," the *Hummell* factors do not warrant an award of attorneys' fees on summary judgment. Defendants have a personal conflict of interest with Plaintiff and abused their discretion in denying distribution of Plaintiff's Plan account. However, whether Defendants acted in bad faith has not been resolved. Defendant Neibauer received a Plan distribution equal to

33

$1,048,585.04 on September 27, 2006; no other evidence has been offered to show Defendants' ability to pay an award of attorneys' fees. Whether an award of attorneys' fees will deter others from acting under similar circumstances has not been established. Such fees would only benefit Plaintiff not the Plan as a whole. The merit of both parties' position is still at issue. Considering all the *Hummell* factors and substantive undecided issues, Plaintiff is not entitled to attorneys' fees and costs as a matter of law at this time. This motion is DENIED.

### V. CONCLUSION

For the reasons stated:

1. Plaintiff's motion for summary judgment on his claim for benefits is GRANTED in part and DENIED in part without prejudice.

2. Plaintiff's motion for summary judgment on his claim for breach of fiduciary duty is DENIED without prejudice.

3. Plaintiff's motion for summary judgment for attorneys' fees and costs is DENIED without prejudice.

4. Plaintiff shall submit a proposed form of order consistent with this memorandum decision within five (5) days of electronic service of this memorandum decision.

SO ORDERED.
DATED:   December 6, 2010

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge